**IN THE UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| THOMAS S. MCCLOSKEY and KEVIN P. MCCLOSKEY<br>    Co-Administrators of the Estate of Philip McCloskey | * * * | |
|     Plaintiffs | * | |
| v. | * | Case No. |
| ROBERT S. MUELLER, III<br>as Director of<br>THE FEDERAL BUREAU OF INVESTIGATION,<br>THE UNITED STATES OF AMERICA,<br>and<br>GARY LEE SAMPSON, | *<br>*<br>*<br>* | 1:04-CV-11015-RCL |
|     Defendants | | |

\* \* \* \* \* \* \* \*

**PLAINTIFFS' RESPONSE AND OPPOSITION TO
MOTION TO DISMISS
OF THE FEDERAL DEFENDANTS**

      THOMAS S. MCCLOSKEY and KEVIN P. MCCLOSKEY, Plaintiffs, through undersigned counsel, and proceeding under Federal Rule of Civil Procedure 12, other appropriate Rules, and relevant Local Rules of this Court, here respond to the Motion to Dismiss submitted by the Federal Defendants. Plaintiffs respectfully request that this motion be denied. And they state:

## I. BACKGROUND CIRCUMSTANCES AND COMPLAINT ALLEGATIONS

As described in Plaintiffs' Complaint and as noted generally in the motion to dismiss, this is an action in Federal and State law against the United States of America for the failure of the Federal Bureau of Investigation arising out if its failure to apprehend a criminal suspect who later murdered Plaintiffs' decedent, Philip McCloskey. The relevant events occurred in July, 2001.

The Complaint sets forth allegations that are to be taken as true for purposes of the present motion to dismiss. On July 23, 2001, Gary Lee Sampson, a federal fugitive wanted for armed robbery, telephoned the Boston Office of the FBI. He stated that he was in the town of Abington, Massachusetts and wanted to turn himself in. Although the FBI initially denied that any such call occurred, in fact Sampson did speak to one William H. Anderson who answered the phone at the FBI office. (The motion to dismiss identifies Mr. Anderson as a "personnel security specialist" who was covering the switchboard during the lunch period.)

Mr. Anderson did not make any arrangements to take Sampson into custody. Anderson did not immediately report the call to his superiors. He did not even notify any other local, State, or Federal authorities. He disconnected the call and did not trace it. (According to the motion to dismiss, Anderson allegedly inadvertently disconnected the call in an attempt to transfer it from the switchboard to an FBI agent). Sampson never called back.

According to information supplied by Sampson after his eventual apprehension following a subsequent crime spree that began on July 23, 2003 and included the murder of Mr. McCloskey, Sampson waited in Abington for several hours for the FBI to come and take him into custody. That did not occur. He was apprehended July 31, 2001 and revealed the abortive phone call to the Federal Bureau of Investigation during his confession.

Press reports regarding the crime spree initially stated that the FBI had no evidence of any phone call by Sampson to the Boston FBI office. (See press reports attached as Exhibit 7 to the Complaint). During the FBI's internal investigation, Mr. Anderson denied receiving any phone call from Sampson and again so stated in an affidavit. However, subsequently Mr. Anderson admitted to the phone call and to the fact that he took no action concerning it even after he, whether inadvertently or not, disconnected the call and Sampson did not call back. (See Complaint at ¶s22-24).

The Complaint further states and alleges (see ¶s 25-27):

Anderson did not report this call to an agent or supervisor nor did he call any district attorney or local police department to report the identity of the fugitive or the whereabouts of Sampson.

Anderson was not supervised nor were there records kept that were subjected to regular scrutiny or monitoring. Anderson did not attempt to track and trace the telephone call nor did he attempt to reconnect the contact with Sampson. Further, the equipment that Anderson was utilizing either did not permit the track and trace of the call that would allow ready reconnect or Anderson was not properly trained in its use.

Anderson was using telephone equipment that was unable to track and trace as indicated above nor was he adequately trained, educated, instructed, advised or supervised prior to or during his employ on the practices and procedures to be implemented in the event of a receipt of such a phone call from a violent fugitive seeking to surrender and the procedure to be followed in the event of a premature termination of the call.

The Federal Bureau of Investigation did not adequately train, instruct and/or supervise Anderson as its agent and/or employee in the practice and procedures to be implemented in the event of such contact and an inadvertent or intentional termination of a phone [call] placed by a violent fugitive seeking to surrender himself to federal custody.

There can be no dispute that Sampson was a wanted fugitive and that he made a phone call to Anderson at the Boston FBI office on July 23, 2001; that Anderson took the phone call and spoke with Sampson and was told by Sampson that Sampson wanted to surrender himself and was told by Sampson <u>where Sampson was located</u>; that Anderson took no action whatsoever on the call including notifying his supervisors or local or State law enforcement; that Anderson disconnected the call, and that Sampson waited in Abington for several hours for the FBI to take him into custody, an event that never occurred.

In addition, there can be no dispute that, within hours or mere days after Sampson's call to the FBI which did not result in his apprehension, Sampson went on a crime spree that involved the abduction and brutal murder of Philip McCloskey. (As the motion to dismiss notes, Sampson eventually was apprehended in Vermont.)

The Complaint presents claims against Mr. Anderson, in his official capacity, and against the FBI under the Federal Tort Claims Act, 42 U.S.C. §1983, and Massachusetts General Law §229. Additional claims are brought against Gary Sampson that are not at issue here.

To this Complaint, the Federal Defendants have submitted the present motion to dismiss ("the Motion"). As Plaintiffs here describe, the motion to dismiss should be denied.

## **II. DISCUSSION**

The Motion first states that Plaintiffs do not assert federal jurisdiction for the State law-related claims. (Motion at 3). However, Plaintiffs clearly state in their Complaint that this Court has jurisdiction over the State law claims by virtue of pendent jurisdiction, as appended to the federal claims asserted under the Federal Tort Claims Act and under 42 U.S.C. §1983.

1.      Standard for Motion to Dismiss.

The Defendants seek to dismiss these claims, with prejudice, under a motion invoking Fed. R.Civ.Pr. 12, for failure to state a claim for which relief can be granted. As is well established, a high standard applies to dismissal motions.

A motion to dismiss should not be granted as long as the complaint states any viable cause of action, even if it appears improbable that the plaintiff can establish the allegations of the complaint. Boston Casualty Co. v. Bath Iron Works Corp., 47 F.Supp. 616 (D. Me. 1942), aff'd, 136 F.2d 31 (1st Cir. 1943), and Louisiana Farmers' Protective Union, Inc. v. Great Atlantic & Pacific Tea Co., 131 F.3d 419 (8th Cir. 1942). The issue is not whether plaintiff can ultimately prevail, but whether the plaintiff is entitled to offer evidence in support of the claims asserted. Halpern v. New Haven, 489 F.Supp. 841 (D.C. Conn. 1980).

In considering a motion to dismiss, the complaint's allegations are to be taken as true, and the complaint must be viewed in a light most favorable to the plaintiff. The complaint should not be dismissed unless it appears to a certainty that the plaintiff would not be entitled to relief under any state of facts which could be proved in support of the claim. Wooldrige Manufacturing Co. v. R.G. La Tourneau, Inc., 79 F.Supp. 908 (D. Cal. 1948); Szoke v. Carter, 165 F.R.D. 34 (S.D.N.Y. 1996); Hyun v. South Kent School, 166 F.R.D. 272 (D.C. Conn. 1996); Workers Union v. McKaugue, 115 F.Supp. 227 (D.C. Pa. 1953), appl. dismsd., 216 F.2d 153 (3rd Cir. 1954), and Amanto v. Witlin, 544 F.Supp. 140 (E.D. Pa. 1982).

Therefore, a complaint should not be dismissed unless it is certain that the plaintiff is not entitled to any relief. The question is not whether plaintiff can prevail but whether the plaintiff is entitled to offer proof on the claims and allegations. Griffin v. De Roberts, 557 F.Supp. 302 (N.D. Ill. 1983); Reiff v. Philadelphia, 471 F.Supp. 1262 (E.D. Pa. 1979); Penn-Virginia Development Corp. v. Diversified Mortgage Investors, 395 F.Supp. 195 (W.D. Pa. 1975). And see Park Electric Co. v. International Brotherhood of Electrical Workers, Local 701, 540 F.Supp. 779 (N.D. Ill. 1982).

2.      Jurisdiction and FTCA and to Agency and Individual Defendants (see Defendants' "A"). Defendants' challenge to this Court's jurisdiction over the present claims under the FTCA is actually a procedural objection concerning the styling of the Complaint (and Amended Complaint). Defendants state that the FTCA waives the government's sovereign immunity in terms of the United States itself only, and that a FTCA claim need not or should not also include particular federal agencies or employees.

4

Defendants acknowledge that the present claim does name the United States as a Defendant and therefore no amended complaint need be filed to add this Defendant. However, Plaintiffs do not agree that the inclusion of the FBI and other agents or employees of the FBI is so fatal to the Complaint (or Amended Complaint) that dismissal of these Defendants is warranted. Nevertheless, Plaintiffs have not objected to dismissal of the agency and its individual employees or agents for FTCA purposes, although Plaintiffs emphasize that any such procedural adjustments should not affect the viability of the FTCA claim itself.

      3.      Deferral of Action on §1983 Claim (Defendants' "B"). As to the claims under 42 U.S.C. §1983, Plaintiffs acknowledge that ordinarily, §1983 concerns parties, actors, or agencies involving State law or authority, and on the whole, does not apply to the United States, federal agencies, or employees. Accardi v. United States, 435 F.2d 1239 (3rd Cir. 1970); Petrenko v. United States, 859 F.Supp. 647 (E.D.N.Y. 1994), and Lynn v. United States Department of Health and Human Services, 583 F.Supp. 532 (S.D.N.Y. 1984). A §1983 claim would not involve a federal employee or agency, and thus would not involve these Defendants, assuming that these Federal Defendants were acting only under federal law and procedure and not under color of any State law. See Ghandi v. Police Department of Detroit, 66 F.R.D. 385 (E.D. Mich. 1975), aff'd, 747 F.2d 338 (6th Cir. 1984) (civil rights suit against FBI under §1983 barred by sovereign immunity, but on defendants' motion to dismiss it would be premature to rule on immunity of individual FBI agents).

However, there yet has been no discovery regarding the precise posture of this matter including the nature of the FBI's employment of Mr. Anderson, or the potential involvement or application of any State law or regulation in this scenario. Although the Complaint does not allege any action under State law or any violation of State law by these Federal Defendants, discovery may reveal State law aspects to these circumstances which could provide a basis for a §1983 claim. In the interests of justice, given the possible complications and potential limitations problems which could result should it be necessary for Plaintiffs' to re-submit any §1983 claim, Plaintiffs urge this Court to defer any ruling on the §1983 claim until appropriate discovery has been completed. See Tritsis v. Baker, 355 F.Supp. 225 (N.D.Ill. 1973), aff'd, 501 F.2d 1021 (7th Cir. 1974) (ATF agents or special employees have no immunity under §1983 in particular circumstances), and Peck v. United States, 470 F.Supp. 1003 (S.D.N.Y. 1979) (federal law enforcement officers were only entitled to qualified immunity in §1983 action in which plaintiff alleged violations of express statutory provisions).

Plaintiffs may be prepared to dismiss the §1983 claim against the federal agency and its employees <u>upon confirming through discovery that no State law or regulation is implicated or invoked in these circumstances</u>, and that the matter thus is confined to issues of federal agents or employees acting under federal law. At this time, until such discovery is conducted, the §1983 claim need not be dismissed. Since the same discovery is involved in all of the claims asserted, Defendants would not be prejudiced--indeed, they do not allege and cannot show any such prejudice--if the §1983 claim is retained until there is further clarity of these circumstances through appropriate discovery.

        4.       <u>Punitive Damages (Defendants' "C")</u>. The inclusion of punitive damages in the Complaint (and Amended Complaint) is not a claim *per se* but an item of relief. A dismissal motion relates to the nature of the claim and whether it is properly alleged or judicially available under the circumstances, and need not address claims for relief or damages. There is no need to dismiss the punitive damages count at this time. If the FTCA and §1983 claims are not available against these Federal Defendants and if there is no other cause of action available against them, as these Defendants maintain, the punitive damages claim is moot in any case. The appropriate discussion is the liability of Defendants to Plaintiffs under FTCA or any comparable cause of action, in this scenario.

        5.       <u>FTCA Liability of Defendants to Plaintiffs Under Massachusetts Law (Defendants' "D")</u>. Defendants maintain that in any event, there is no liability under the FTCA to Plaintiffs. Naturally, Plaintiffs challenge that contention, and further state that determinations relevant to such issues cannot be made in the context of a motion to dismiss.

        A.       <u>General Contentions.</u> Defendants suggest that this situation involves a clearly discretionary act and there is no waiver of sovereign immunity for discretionary conduct (see Motion at fn 4 and 28 U.S.C. §2680(a)). However, Plaintiffs dispute that a purely "discretionary act" is involved here, as defined under the FTCA or under any comparable Massachusetts law. In addition, whether a discretionary act is involved is not a matter for determination on a motion to dismiss.

These matters are also bound up with a similar core issue of whether the United States of America can be liable to Plaintiffs under a standard negligence approach. Plaintiffs agree that in this context, to find liability, Plaintiffs must show that "under like circumstances a private individual would be liable." Plaintiffs also agree that comparable State law, particularly Massachusetts law, governs determination of such liability.

Defendants suggest that these issues can be decided not only as a matter of law but also on a threshold basis upon a motion to dismiss. Plaintiffs maintain that neither approach is valid. These issues must be decided by a trier of fact. Further, under standards applicable to a motion to dismiss, Defendants' motion must fail. For example, after reciting the basic elements of negligence liability, Defendants maintain (see Motion at 7-8):

> Absent from Plaintiffs' Complaint, however, is a statement of authority for the proposition that a private person would be liable under Massachusetts law for the type of non-feasance alleged here, *i.e.*, a failure to protect an individual from harm caused by a third person. The absence of such authority is telling. Plaintiffs cannot establish that a duty of care exists in circumstances similar to those alleged here.

Such statements are more appropriate to a motion for summary judgment or to a jury argument, than to a motion to dismiss. The review of a motion to dismiss under FRCP 12 is not concerned with the likelihood of recovery for the plaintiff, but whether plaintiff has alleged any claim or cause of action that conceivably could entitled the plaintiff to any relief and thus is sufficient to permit the plaintiff an opportunity to present proof on that claim.

   B.   "Discretionary Act." Nevertheless, regarding these issues, Plaintiffs first take up the matter of whether Mr. Anderson's action is "discretionary conduct" exempt from liability under the FTCA. (see 28 U.S.C. §2680(a)). Plaintiffs contend that it is not exempt.

   A determination of discretionary function for FTCA purposes is a two-step analysis. The first inquiry is whether the challenged action involved "a matter of choice" for the employee, since conduct cannot be "discretionary" unless it involves an element of purely independent "judgment." Consequently, an action is not "discretionary" if a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow. By the same token, if the employee's action violated such a statute, regulation, or policy, it is not a "discretionary" act. E.g., Berkovitz by Berkovitz v. United States, 486 U.S. 531 (1988); United Stats v. Gaubert, 499 U.S. 315 (1991); Baum v. United States, 986 F.2d 716 (4th Cir. 1993); Bergmann v. United States, 689 F.2d 789 (8th Cir. 1982), and Summers v. United States, 905 F.2d 1212 (9th Cir. 1990). And see generally, e.g., Littell v. United States, 191 F.Supp.2d 1338 (M.D. Fla. 2002) (discussing discretionary function exception).

   Second, even if no statute, regulation, or policy applies, the court must then determine whether the choice or judgment involved in the exercise by the employee of any discretion, is the sort of action or judgment which should come within the discretionary function exemption of the FTCA. That is, the basis of the exemption is to avoid judicial "second-guessing" of federal employee conduct and to avoid bringing legislative and administrative decisions into a tort

action that necessarily invokes social, economic, and political policy considerations. Only when the exercise of discretion involved is of a type that strikes at such concerns, should the discretionary function exception apply.

Thus, the discretionary function exception does not apply wholesale to every action of a federal employee. If there is an existing regulation or policy describing an action to be taken or, absent that, if the action otherwise appropriately could be the subject of a claim brought to the courts, the exception is not involved. See, e.g., Sanchez v. Bellefeuille, 855 F.Supp. 587 (N.D. N.Y. 1994), at 591-593 (signs to be placed on highway for traffic checkpoints, standards under applicable handbook, discretionary function exception does not apply).

Given those considerations, it cannot seriously be contended by these Defendants, particularly in the context of a motion to dismiss, that there is no guidance, no policy, no handbook, no rule, and no regulation, regarding the handling or treatment within an FBI office of a phone call from a wanted fugitive who states where he is and also states that he wishes to turn himself in and be taken into custody (again, taking the allegations of the Complaint as true for purposes of the present dismissal Motion). Defendants indicate, by contending that Mr. Anderson's conduct was a discretionary act, that he violated no external statute or rule and no internal agency or bureau policy not only in disconnecting Sampson's call to the FBI office (whether inadvertently or not) but also in failing to inform any supervisor or agent and in failing to take any further action whatever on the call including lack of any notification to any State or local law enforcement.

Even if Defendants intend to make such a contention, Plaintiffs have not had the opportunity to conduct any discovery to verify if any external or internal policy, guidance, rule, or regulation is involved in this scenario. Moreover, the fact that the FBI would conduct its own internal investigation of whether such a call in fact was made to its Boston office by Sampson and whether Mr. Anderson in fact did speak to Sampson, clearly indicates that, at least, an internal FBI bureau or agency procedure was violated by Mr. Anderson's conduct.

Further, as has been indicated, even if there is no applicable policy, guidance, handbook, regulation, or statute, this is not the sort of judgment or action that should be beyond the review of the courts. An appropriate claim under the FTCA should be brought regarding a situation of an FBI employee who took a phone call from a wanted fugitive who stated he wished to turn himself in, and then disconnected the call (again, inadvertently or not) and did not immediately inform supervisors, any FBI agent, or State or local law enforcement authorities. Such an action of "judgment" is so extreme that even if considered a discretionary act should not be beyond the reach of the courts under a discretionary conduct exemption.

Thus, at this point certainly, dismissal is not warranted on the basis that Mr. Anderson's conduct was "discretionary" and therefore exempt from liability under the FTCA. Quite to the contrary, his actions indicate gross malfeasance and violation of any applicable policy or guidance regarding how such calls are to be handled and what actions are to be taken.

### C. Liability Generally Under FTCA and "Special Relationship.

Defendants maintain that overall, there is no responsibility in negligence law to protect third persons from harm, absent a "special relationship" between the defendant and either the person causing the harm or the person who is harmed. Defendants note that Massachusetts law applies and argue Massachusetts General Law c. 258 §10(h). However, Defendants also cite to various other authorities including decisions outside Massachusetts and Restatement 2d Torts.

Based on Defendants' contention that there is "no general duty to protect victims of crimes" from criminal actors, Defendants assert that there is no liability here. See, Motion at 7-10 and, e.g., Leidy v. Borough of Glenolden, 277 F.Supp.2d 547 (E.D. Pa. 2003) (as to no duty to protect victims of crime); Sea Air Shuttle Corp. v. United States, 112 F.3d 532 (1st Cir. 1997), and Myers v. United States, 17 F.3d 890 (6th Cir. 1994) (regarding duty of care as based on relationship between government employee and plaintiff). See also, Marin v. United States, 814 F.Supp. 1468 (E.D. Wash. 1992) (government agents had duty to warn victim whom they knew to be a target of individual who was released from custody to work as a government informant but who had absconded and had returned to town where specific person resided whom informant had threatened with harm or death, all of which was known to agents, although no action was taken to apprehend individual or warn victim, who subsequently was murdered by individual by gunfire while victim was sitting in car in broad daylight, discretionary action exemption did not apply); See also Fair v. United States, 234 F.2d 288 (5th Cir. 1956), (FTCA claim available in action against government for murders committed by person released from hospital where government agents or employees were aware of specific threats to those victims made by the individual, and where no notification or other warning was given once individual was released, no discretionary act exemption), and Ochran v. United States, 117 F.3d 495 (11th Cir. 1997) (decision not to inform threatened witness of

9

remedies against intimidation and harassment of individual who government agents knew or had reason to know would harm witness, did not come within discretionary action exemption).

Other decisions have found either that this "special relationship" does exist or have found liability absent a "special relationship." Thus, liability can be present here.

Of interest is Sheridan v. United States, 487 U.S. 392 (1988), where the Supreme Court considered a claim under the FTCA by a couple who were injured from rifle shots fired by an intoxicated off-duty Navy serviceman who worked at a Navy hospital. Other seamen had come across the serviceman, prior to the incident, and were aware that he had a rifle in his possession, but did not stop him or notify any authorities. Dismissal of the FTCA claim was reversed, the Supreme Court finding, among other things, that the FTCA exception for actions "arising out of" assault, battery, false arrest, false imprisonment (etc.) (see 28 U.S.C. §2680) did not apply.

The Sheridan court stated that the nature of such a claim is the government's negligent act or omission. The intentional conduct which follows later "is simply considered as part of the causal link leading to the injury." Thus, "Under this view, the assailant's individual involvement would not give rise to Government liability, but antecedent negligence by Government agents could, provided of course that similar negligent conduct would support recovery under the law of the State where the incident occurred." 487 U.S. at 399.

The Court further noted that in the case before it, applicable regulations prohibit possession of firearms on the naval base premises and require all personnel to report the presence of any such firearm. (See 487 U.S. at 401 and fn. 5). If on that basis, recovery might be available were the naval base a private facility, then liability could be found under the FTCA. The fact of government employment of the actor who actually caused the harm, or whether that harm amounted to an "assault and battery," were not dispositive of the claim. The Court concluded (487 U.S. at 403) [emphasis supplied]:

> If the Government has a duty to prevent a foreseeably dangerous individual from wandering about unattended, it would be odd to assume that Congress intended a breach of that duty to give rise to liability when the dangerous human instrument was merely negligent but not when he or she was malicious. In fact, the human characteristics of the dangerous instrument are also beside the point. For the theory of liability in this case is analogous to cases in which a person assumes control of a vicious animal, or perhaps an explosive device.

And see also Justice Kennedy, concurring.

In Williams v. United States, 450 F.Supp. 1040 (D. S.D. 1978), the court considered the negligence of a Veterans' Administration hospital in failing to notify county authorities of the discharge and release of an individual who

had a propensity for violence, and who shortly after his release, and in a random fashion, shot and killed a shopkeeper on the street. The court found a sufficient basis for liability, and did not expressly discuss "special relationship" aspects although it was clear that the individual had a history of violence and that this was known to the hospital and its staff.

Of interest as well is the court's discussion of "duty" and "proximate cause" (see fn. 2) and the nature of causation (at 450 F.Supp. at 1045):

> "In order to find that the defendant is liable to the plaintiff, the defendant's negligent act must be the proximate cause of the plaintiff's injury. That is, the harm suffered must be found to be a foreseeable consequence of the act complained of. This does not mean, of course, that the precise events which occurred could, themselves, have been foreseen as they actually occurred; only that the events were within the scope of the foreseeable risk."

The Williams Court found that given the individual's past history of violent behavior, it was foreseeable that "if released without supervision and left to his own devices" he would become drunk and violent and "might make a violent, even fatal attack upon another." The court further found that the hospital's failure to notify the police so that the individual could be placed in custody and allowing him to leave on his own "was a substantial factor in bringing about" the fatal incident.

In Mulloy v. United States, 884 F.Supp. 622 (D. Mass. 1995), the court found liability under the FTCA involving an incident where the wife of an army officer was beaten, raped, robbed and murdered by an enlistee on a United States Army base in Germany, while living on the base, in an apparent random act. The claim was grounded in part on the government's negligence in failing to determine, when accepting the enlistee into the armed services, that the enlistee had made false statements on his application and had a criminal record. The court found that the "assault and batter" exception did not bar the FTCA claim, nor did the exception for discretionary conduct, since there are precise procedures to be followed in reviewing an application for enlistment into the armed services.

As to the scope of duty owed, the court noted the general rule that there is no duty to protect others against criminal acts of third parties. However, a defendant may be negligent "for its failure to protect against such intentional acts where the defendant realizes or should realize that its act or omission involves an unreasonable risk of harm to another through the acts of the third person." 884 F.Supp. at 631, citing, e.g., Restatement (Second) Torts §302B, and other authorities. (emphasis supplied).

The Mulloy court found liability in that;

1) by negligently enlisting the serviceman who caused the harm, the government "affirmatively created the conditions under which he was able to perpetrate his crimes" against the victim;

2) the enlistment screening process itself involves assumption by the armed services of a duty to exclude persons with violent or criminal backgrounds making them unfit to serve and persons who frequently come into contact with soldiers have a right to rely upon this screening process, and

3) the victim and the armed services were in a special relationship that is "analogous to the relationships which create a special duty to protect against foreseeable third-party crimes" under State law. There was a "substantial likelihood" that the negligently admitted enlistee would commit a criminal act against another. Thus, "special relationship" was not the sole basis for liability.

Therefore, the issue is the foreseeability that the failure by the government agent or employee to take control of a violent person would result in harm to another, and whether such liability could attach under the prevailing law of the State where the incident occurred. Once again, these are not considerations for a motion to dismiss, and even if so, these considerations do not mandate dismissal of Plaintiffs' FTCA claims.

### D. Liability Considerations Under Massachusetts Law and "Special Relationship" and Foreseeability.

If liability under the FTCA also is grounded on whether liability can be found under the applicable State law, in this instance Massachusetts, there also is no necessity for dismissing the present claims. Massachusetts recognizes the potential for this liability, even if liability is not always found in certian instances involving special statutory exceptions from liability. There is particular immunity for a municipality from claims under the State Tort Claims Act (see M.G.L. §10(h) and §10(j)). These sections provide municipality immunity for any failure by a municipal police department to provide adequate police protection or prevent crimes, or prevent the violent or tortuous conduct of a third person unless there has been "explicit and specific assurances of safety and assistance" made to the victim, and the victim's injury resulted in part from reliance on those assurances. (See Carleton v. Town of Framingham, 418 Mass. 623, 640 N.E.2d 452 (1994) (as to retroactive application of statute)).

Defendants note Ford v. Town of Grafton, 44 Mass. App. Ct. 715, 693 N.E.2d 1047 (1998), considering these statutory provisions, and involving a long history of attempts by a woman who was the victim of constant threats and assaults by her former husband, to seek assistance and protection of local law enforcement. No specific protection was

offered despite frequent incidents, eventually leading up to a violent attack in which the woman was shot by her former husband, resulting in quadriplegia. The court found that the town and law enforcement had not made an "explicit and specific assurance" of safety to the victim, so as to come within exception to immunity under M.G.L. §10(h) and §10(j)).

See also, <u>Lawrence v. City of Cambridge</u>, 422 Mass. 406, 664 N.E.2d 1 (1996), where the court found that summary judgment was not warranted in an action by a worker who was assaulted while closing his store, after there was a promise of police protection during those activities, because the store worker had agreed to testify against certain individuals who had committed a crime against him. The court stated that it was not necessary, to come within this exception, for the plaintiff to assert additional details such as which officers would provide protection and or how they would be deployed.

The effect of these sections upon the present claim, however, is limited. Plaintiffs' claims do not invoke these particular sections, and instead are grounded upon the FTCA. This is not a claim against a State municipality but against the federal government arising out of the conduct of its employees. The issue in applying State law elements to an FTCA claim is whether the general principles of law recognized in that State, namely Massachusetts, would permit liability, <u>if the government agent were a "private person."</u> A specific imposition by State statute of municipal immunity, due to certain public policy decisions in the State legislature, is a separate discussion and does not prevent FTCA liability. If the State recognizes the principles of liability, then liability under the FTCA is available.

In <u>Westerback v. Harold F. LeClair Co., Inc.</u>, 50 Mass. App. Ct. 144, 735 N.E.2d 1256 (2000), the court considered a claim against a bar owner by a bar patron who had been assaulted and raped by criminals, in a random act after she left the bar, but when she was in an intoxicated state having had several drinks at the bar. The court found no liability in the specific instance, yet did recognize the basic liability elements to be applied here. The court noted that an act of a third person committing an intentional tort can be the basis of <u>liability where the defendant realized or should have realized the likelihood that such a situation might be created and that the third person might avail himself of the opportunity to commit a crime</u>. (emphasis supplied). The specific kind of harm need not be foreseeable provided that it was foreseeable that there would be violence toward others. 735 N.E.2d at 1258-1259, citing, e.g., <u>Gidwani v. Wasserman</u>, 373 Mass. 162, 365 N.E.2d 827 (1977) (landlord liable for burglary of tenant's clothing store after disengaging alarm); <u>Carey v. New Yorker of Worcester, Inc.</u>, 355 Mass. 450, 245 N.E.2d 420 (1969); <u>Mullins v. Pine Manor College</u>, 389 Mass. 47, 449 N.E.2d 331 (1983) (failure of college to provide adequate security against intruders,

liability for rape of student); Sharpe v. Peter Pan Bus Lines, Inc., 401 Mass. 788, 519 N.E.2d 1341 (1988) (bus line and municipality that operated terminate could be liable for unprovoked stabbing of patron), and Fund v. Hotel Lenox of Boston, Inc., 418 Mass. 191, 635 N.E.2d 1189 (1994) (murder of guest in hotel located in high crime area, lack of adequate security).

It should also be noted, with respect to any "discretionary action" exception under any applicable State law, that the analysis in State law of "discretionary act" is strikingly similar to the analysis under the FTCA. See, e.g., Ford v. Boston Housing Authority, 55 Mass.App. Ct. 623, 773 N.E.2d 471 (2002); Barnett v. City of Lynn, 433 Mass. 662, 745 N.E.2d 344 (2001); Serrell v. Franklin County, 47 Mass. App. Ct. 400, 713 N.E.2d 389 (1999), and Harry Stoller and Co., Inc. v. City of Lowell, 412 Mass. 139, 587 N.E.2d 780 (1992). Thus, the same statements by Plaintiffs concerning "discretionary action" under the FTCA would be directed to any considerations of any similar applicable exceptions under State law. And see, e.g., Coughlin v. Department of Correction, 43 Mass. App. Ct. 809, 686 N.E.2d 1082 (1997) (wrongful death action against State agencies and employees due to parole of convicted rapist who subsequently committed murder, not barred by Tort Claims Act discretionary function exception since complaint alleged violations of statutes, rules, and regulations relating to parole process and also alleged failure to exercise reasonable care); Irwin v. Town of Ware, 392 Mass. 745, 467 N.E.2d 1282 (1984) (police officer decision to remove from roadway driver who officer knows or has reason to know is intoxicated, is not a discretionary function within State Tort Claims Act exception), and Bonnie W. v. Commonwealth, 419 Mass. 122, 643 N.E.2d 424 (1994) (sexual assault victim claim that attacker's parole officer contributed to injury by negligently recommending that attacker continued to be employed at trailer park where incident occurred and misrepresenting attacker's criminal history to park management was not barred by amendments to Tort Claims Act, by discretionary function exception, or by other exceptions).

Thus, Massachusetts law recognizes the principles, if applied to a private actor / defendant, that liability can be found for creating or allowing a series of events or circumstances that result in harm to a third party by an individual who the defendant knows or has reason to know will cause such harm. Again, as noted, <u>the amendments to the State Tort Claims Act are not a bar here, because the FTCA liability analysis concerns application of general principles of state law to private parties, rather than any particular State statutory provisions which result from independent and unrelated legislative determinations</u>.

Further, as to any requirement of "special relationship," that analysis considers the special relationship of between defendant and the individual causing the harm, or the victim of the harm. Here, the FBI as a law enforcement agency already had a special relationship with Sampson, because it was aware that he was a violent fugitive from justice. The relationship became even more crystallized when he contacted the FBI and informed the FBI of his whereabouts and said he wanted to be taken into custody. The FBI did not take him into custody and thus created or permitted the subsequent series of events that led to the murder of Mr. McClosky. The situation is no different than the awareness of violent behavior or potential of the individuals causing harm in random acts as seen in Sheridan, Williams, and Mulloy.

Plaintiffs thus have established the necessary elements of a cause of action for negligence under the FTCA and comparable principles of State law. A duty of care existed in these circumstances to prevent a foreseeable sequence of events that were likely to occur in the failure to take into custody a fugitive who had committed crimes and thus was likely to do so again. There need be no special relationship to the victims if there was a special relationship with the individual causing the harm, even assuming such a special relationship is required. State law provisions immunizing municipalities for failing to protect victims from crime, and decisions related to those provisions, are not part of or applicable to this analysis.

### 6. Additional Foreseeability and Negligence Matters (Defendants' "E").

The decisions already cited and discussed further establish sufficient proximate cause to permit liability here. This also is not a decision to be made as a matter of law in the context of a motion to dismiss, but is properly a matter for a trier of fact.

Defendants' own recitations of the definition of proximate cause (see Motion at 11-12 and cases cited) establish that there need be no dismissal on this basis. The plaintiff need not show that the particular harm that resulted from the negligent conduct was foreseeable, only that a harm of the same general character was a foreseeable result of the defendant's conduct. Glick v. Prince Italian Foods, Inc., 25 Mass. App. 901, 514 N.E.2d 100 (1987), and Dziokonski v. Babineau, 375 Mass. 555, 380 N.E.2d 1295 (1978).

It cannot be asserted in the context of a motion to dismiss, that, assuming negligence occurred in the FBI's or in Mr. Anderson's failure to act on Sampson's phone call and take him into custody or notify other authorities, it is not foreseeable that a wanted criminal and fugitive would commit other criminal acts against other persons. There is very

little "speculation" involved in such foreseeability. Defendants attempt to return to the issue of discretionary conduct, but that issue is a separate discussion having to do with the failure utterly to act to take Sampson into custody. This is more than a law enforcement decision which should be beyond judicial review--for Defendants' argument taken to its logical conclusion would exempt all law enforcement action of nearly any kind, from liability.

Further, despite Defendants' contentions that this issue can be decided as a matter of law at the dismissal stage, it <u>is</u> for a trier of fact to determine whether, as Defendants maintain, "The disconnected phone call and the failure to reconnect or report the call do not naturally and probably lead to the murder without an intervening discretionary decision to immediately apprehend" or that there is no foreseeability or link between this failure to apprehend and Sampson's subsequent criminal acts. This is not the "mere possibility" of causation, but a foreseeable result of such action.

Defendants' additional explanation that there is no foreseeability because it is not reasonable to assume that <u>a bank robber would commit murder</u>, stretches the standards of dismissal beyond its limits. Defendants contend, "participation in prior less severe violent acts does not make it foreseeable or likely that a person would commit murder." Foreseeability does not depend upon such fine points. Nor can this argument properly be countenanced in the context of dismissal.

Nor is it mere "speculation" to suggest that Sampson would have been apprehended prior to the murder of McCloskey had Sampson's call to the FBI not been disconnected. The Complaint alleges that Sampson waited for several hours in Abington for FBI agents to come to take him into custody. It is quite probable that had immediate notification gone out to local law enforcement and had the FBI otherwise acted appropriately and promptly, Sampson indeed would have been apprehended. The failure to do so was a direct and proximate cause of his continuing to be at large and, with knowledge by the FBI of his violent and prior criminal conduct, was a proximate cause of Sampson's subsequent crime spree including the murder of Mr. McCloskey.

Defendants also appear to suggest, rather, that Sampson's contact of the FBI was a prank or a hoax. That is not a determination to be made in the context of a motion to dismiss.

The elements of proximate cause are alleged and established here. See generally (given that Defendants have noted other decisions outside Massachusetts, see <u>Webb v. Haas</u>, 1999 Me 74, 728 A.2d 1261 (Me. 1999), e.g., <u>Alabama Department of Corrections v. Thompson</u>, 855 So.2d 1016 (Ala. 2003) (same, as to foreseeability); <u>Austin v. City of</u>

16

Scotsdale, 140 Ariz. 579, 684 P.2d 151 (1984) (also as to foreseeability); Benway v. City of Watertown, 1 App.Div.2d 465, 151 N.Y.S.2d 485 (1956) (negligent action in returning husband's firearm to him); Torres v. State, 894 P.2d 386 (N.M. 1995) (foreseeability for jury, failure of law enforcement officers to investigate crime, subsequent murders in another state by suspect, law enforcement duty not limited only to known victims of crime in progress or to specific elements of public in danger or even to public within certain political boundaries); Brown v. Washington County, 163 Or. App. 362, 987 P.2d 1254 (1999) (fact issue as to whether county knew or had reason to know that released inmate was likely to cause bodily harm); and Scovill v. City of Astoria, 129 Or. App. 240, 878 P.2d 1127 (1994) (immunity issue could not be decided on motion to dismiss).

The element of foreseeability is sufficiently presented in this Complaint (and Amended Complaint). The Defendants' failure to apprehend or take into custody a known fugitive who had committed violent crime, after being informed by the fugitive of his whereabouts and interest in being taken into custody, set in motion a clearly foreseeable chain of events that reasonably resulted in other criminal acts committed by this person against third parties. More than sufficient foreseeability, devoid of speculation, exists to deny a motion to dismiss.

### III. CONCLUSION

THEREFORE, the premises considered, and for the reasons stated, Plaintiffs request that Defendants' Motion to Dismiss be DENIED.

**THE PLAINTIFFS RESPECTFULLY REQUEST ORAL ARGUMENT ON THIS MOTION.**

RESPECTFULLY SUBMITTED,

_____
KEVIN REDDINGTON
1342 Belmont Street
Suite 203
Brockton, Massachusetts 02301
(508) 583-4280
BBO #414 160

Attorney for Plaintiffs

CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that on this _____day of November, 2004, a true copy of this Plaintiffs' Response and Opposition to Motion to Dismiss was served, by first class mail postage prepaid, upon:

     DAVID V. KIRBY, ESQ.
     Acting United States Attorney
     BY:
     CAROL L. SHEA, ESQ.
     Special Attorney
     Chief, Civil Division
     U.S. Attorney's Office
     P.O. Box 570
     Burlington, Vermont 05402-0570

     Attorney for Federal Defendants

_____
KEVIN REDDINGTON