THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THOMAS S. McCLOSKEY and<br>KEVIN P. McCLOSKEY,<br>    Plaintiffs<br><br>v.<br><br>ROBERT S. MUELLER, III, Director of the<br>Federal Bureau of Investigation, *et al.*<br>    Defendants. | )<br>)<br>)<br>)<br>)  1:04-CV-11015-RCL<br>)<br>)<br>)<br>) |

## THE FEDERAL DEFENDANTS' REPLY MEMORANDUM

The Federal Defendants hereby reply to Plaintiffs' Response and Opposition To Motion To Dismiss ("Pl. Opp."). This Reply includes: (1) a response to Plaintiffs' (hereinafter "the McCloskeys") request that the Court "defer" decision on a jurisdictional issue; (2) clarification as to the nature of the claims to which the discretionary function exemption of the Federal Tort Claims Act applies here; and (3) discussion of several cases cited in Plaintiffs' Opposition.

### 1. The Court Should Not Defer a Decision on a Jurisdictional Issue to Allow McCloskeys to Engage in a Needless Fishing Expedition.

The McCloskeys have sued William Anderson and Robert Mueller, III in their official capacities. Earlier in this litigation, they jointly moved with the Federal Defendants for dismissal of Anderson in his individual capacity. *See* Docket, Paper 16 (filed September 24, 2004). The Court granted that motion on October 30, 2004. *See* Docket Entry for Electronic Order dated October 30, 2004. Thus, the only claims that remain against individual Federal Defendants are official capacity claims.[1]

---

[1] Moreover, in their Complaint, the McCloskeys represent that they intended to hold Anderson personally responsible for his tortious conduct "unless and until his status as a federal employee whose conduct occurred while acting within the scope of his office or employment is acknowledged." Compl. (Amended) at ¶ 6. The Complaint goes on to note that Anderson is only liable until and unless he is "certified by the Attorney General or his delegate as an

The McCloskeys agree that "ordinarily" there is no jurisdiction for a federal court to consider claims brought under 42 U.S.C. § 1983 against federal defendants. Pl. Opp. at 6.[2] However, they claim that they need to engage in discovery to determine if Anderson's actions were taken pursuant to state law or regulation, which, according to the McCloskeys, would trigger application of section 1983. This is a fishing expedition that is purely dilatory and needless. The United States Attorney has already certified that Anderson was acting within the scope of his employment as an employee of the United States at the time in question. The McCloskeys do not challenge that certification. Rather, they want to explore whether Anderson, a federal employee, was somehow acting pursuant to state law. However, the cases they cite are not controlling and have virtually no persuasive effect because they do not support the proposition that section 1983 claims against federal officials sued in their official capacities can survive dismissal in a case such as this. For example, in *Tritsis v. Backer*, 355 F. Supp. 225 (N.D. Ill. 1973), *aff'd*, 501 F.2d 1021 (7th Cir. 1974), the court noted that although the complaint

---

individual who was acting within the scope of his authority. . . ." *Id.* The United States Attorney has so certified. *See* Certification attached to Federal Defendants Motion To Dismiss (filed Sept. 24, 2004).

[2] The United States, its agencies and federal officials acting in their official capacity are not "persons" within the meaning of section 1983. *District of Columbia v. Carter*, 409 U.S. 418, 423-25 (1973) (dismissing § 1983 claims against federal police officer in District of Columbia and explaining that the legislative history and purpose of section 1983 was to enforce the provisions of the Fourteenth Amendment and that the Federal Government and its officers were beyond the purview of that Amendment and hence, section 1983), *superseded by legislation*, Pub.L. 960170 (1979) (adding District of Columbia to scope of section 1983); *Wheeldin v. Wheeler*, 373 U.S. 647, 650 n.2 (1963) (federal investigator for U.S. House of Representatives Committee was not acting under color of state law for section 1983 purposes); *Case v. Milewski*, 327 F.3d 564, 567-68 (7th Cir. 2003) (federal officers investigating complaint concerning federal property were not acting under color of state law for section 1983 purposes even though investigation took them off federal property and ultimately officers charged state criminal offenses).

claimed jurisdiction under section 1983, it was properly addressed as a *Bivens* claim, *i.e.*, a claim against individual federal defendants in their *individual or personal capacity* for violations of federal constitutional or statutory rights. *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).[3] Further, nothing in the *Tritsis* decision suggests that in circumstances such as those presented here, discovery is warranted prior to dismissal on jurisdictional grounds.

*Peck v. United States*, 470 F. Supp. 1003 (S.D.N.Y. 1979), is also unavailing here. It is immediately distinguishable in that it alleges a violation of civil rights under a conspiracy theory pursuant to 42 U.S.C. §§ 1983 and 1985(3). The facts alleged here are that the FBI received an unexpected phone call from Sampson offering to turn himself in to the FBI and that Anderson, who answered the phone when Sampson called the FBI, disconnected the call and then failed to attempt to reconnect or trace it, or to inform anyone else at the FBI of the call. The Complaint also alleges that the FBI negligently supervised Anderson by not providing sufficient training or technology. These various omissions allegedly led to the failure of the FBI to apprehend Sampson that same day. These allegations do not support a conspiracy theory. Moreover, under

---

[3] Here, even if the Court were to convert the section 1983 claims to claims brought pursuant to *Bivens*, as explained in Fed. Def. Mot. to Dismiss, at 5-6, there is still no jurisdiction for claims for monetary damages brought against federal officials acting in their official capacity. The McCloskeys would have to name and serve federal officials in their personal capacities. Contrary to taking such steps, the McCloskeys just moved to dismiss the claims against Anderson in his personal capacity and retain only the official capacity claims. Similarly, Defendant Robert Mueller is sued only in his official capacity as Director of the FBI. *See* Compl. (Amended) at ¶¶ 5, 7, 34, 37, 40, 47, 51, 56. There are no specific factual allegations suggesting any personal involvement by Director Mueller in the acts or omissions at issue here; nor has he been personally served with the Complaint (either the original or amended Complaint). Thus, there are no *Bivens* type claims here.

*Peck*, the only manner by which federal officers can be included in section 1983 or section 1985 liability is to allege a joint conspiracy with state officers. 470 F. Supp. at 1008. In this case, no state actors have been sued, nor are there allegations of any conspiracy with state actors. As specifically noted in *Peck*, even knowledge by the FBI of a planned illegal action "coupled with allegations of failure to take any action is insufficient to plead joint participation in a conspiracy." *Id.* Certainly nothing in *Peck* supports the notion that discovery prior to dismissal on jurisdictional grounds is warranted in this case.

### 2. The United States Does Not Claim That The Acts or Omissions of William Anderson Are Subject to the FTCA's Discretionary Function Exemption.

The McCloskeys argue that they need discovery on the question of the application of the discretionary function exemption to this case. This argument is based upon an apparent misunderstanding. The United States does not claim that Anderson's actions in disconnecting the phone call and subsequently failing to reconnect, trace or report the call are subject to the Federal Tort Claims Act's (FTCA) discretionary function exemption. Rather, the discretionary function exemption applies to any claim that the FBI is liable for their decedent's death due to a failure to apprehend Sampson. That is, the McCloskeys assume that if Anderson had notified a supervisor or an agent of Sampson's call, that notification would have triggered immediate apprehension of Sampson, thereby preventing the death of Philip McCloskey. However, investigative functions and decisions, including when and where to apprehend fugitives, is subject to the discretionary function exemption. "Although law enforcement agents have a mandatory duty to enforce the law, decisions as to how best to fulfill that duty are protected by the discretionary function exception to the FTCA." *Horta v. Sullivan*, 4 F.3d 2, 21 (1st Cir.

4

1993). The First Circuit has also made clear that "[s]ince decisions to investigate, or not, are at the core of law enforcement activity," said conduct is the type of "policy-rooted decision making that section 2680(a) was designed to safeguard." *Kelly v. United States*, 924 F.2d 355, 362 (1st Cir. 1991). *Cf. United States v. Beltran*, 917 F.2d 641, 643 (1st Cir. 1990) (there is "no legal principle or authority which we are aware that requires a policeman to execute and arrest warrant as soon as he obtains it").

To the extent that the Complaint asserts a claim of negligence based upon an alleged failure by the FBI to employ specific technology to reconnect or trace calls, that claim too would be subject to the discretionary function exemption as it clearly implicates budgetary and policy making decisions. "Allocation of resources and budget management involve prioritizing and are quintessentially policy-based choices." *Limar Shipping Ltd. v. United States*, 324 F.3d 1, 10 (1st Cir. 2003) (citing *Varig Airlines*, 467 U.S. at 820).

These legal principles are well established. To the extent that the McCloskeys' Complaint is construed to frame negligence claims based on a failure to apprehend Sampson, or the alleged failure to employ specific technology at the FBI office, there need be no discovery prior to deciding that, pursuant to 28 U.S.C. § 2680(a), the United States has not waived its sovereign immunity as to any such claims.

### 3. The Cases Cited in Plaintiffs' Opposition Are Not Controlling or Persuasive on the Questions of the Existence of a Duty of Care or Proximate Cause.

#### A. The United States had neither a duty to protect Philip McCloskey nor a duty to control Gary Sampson.

As a preliminary point, the McCloskeys do not object to dismissal of the FBI, Director Mueller, or William Anderson for any claims brought under the FTCA, 28 U.S.C. §§ 2670-80.

The law has long made clear that the only appropriate defendant for such claims is the United States. This is a jurisdictional issue, and therefore, pursuant to Fed. R. Civ. P. 12(b)(1), all claims under the FTCA brought against all other parties should be dismissed.

As to the FTCA claim brought against the United States, the McCloskeys fail to establish a critical component of their jurisdictional prerequisite: a duty of care. *See Myers v. United States*, 17 F.3d 890, 899 (6th Cir. 1994). Under the FTCA, the United States is only liable to the extent that a private person in like circumstances would be liable under the laws of the place where the events giving rise to the Complaint occurred. 28 U.S.C. § 1346(b)(1). Thus, whether the waiver of sovereign immunity applies requires an analysis of the duty of care. However, even if the Court believes the issue is not jurisdictional in nature, the question of whether a duty of care exists is a critical element of a negligence cause of action. *Jorgensen v. Massachusetts Port Authority*, 905 F.2d 515, 522 (1st Cir. 1990).

The McCloskeys apparently concede that under general common law, *see* Restatement 2d Torts § 315, there is no duty to protect third persons from harm unless a special relationship exists between the actor and the third person, or a special relationship between the actor and the person causing the harm such that the actor has a duty to control the other's conduct. The parties diverge on the question of a "special relationship," both with respect to the existence of such a relationship between the FBI and McCloskey, and the existence of a special relationship between the FBI and Gary Sampson. *See* Pl. Opp. at 12-13. The cases cited by the McCloskeys on these issues do not bolster their argument that such relationships existed here.

We begin with the cases cited on the issue of the relationship between the FBI and McCloskey. First and foremost, it is an undisputed fact that the FBI did not promise to protect

McCloskey from Sampson nor notify McCloskey of Sampson's presence in the area. That fact alone distinguishes the McCloskeys' case from the facts presented in *Fair v. United States*, 234 F.2d 288 (5th Cir. 1956) (parenthetical).[4] The McCloskeys' case is also distinguishable from *Marin v. United States*, 814 F. Supp. 1468 (E.D. Wash. 1992) (indicted defendant released from custody to serve as informant known to be clear danger to known victim because of prior threats and conduct), because it does not involve knowledge by the FBI that Philip McCloskey was a clear target of Sampson's and was in danger.[5] Finally, *Ochran v. United States*, 117 F.3d 495 (11th Cir. 1997), supports the United States' position here. In that case, a federal prosecutor declined to provide any protection for an informant after learning that the criminal defendant had threatened the informant. The Eleventh Circuit held that the prosecutor's decisions in that regard were protected by the discretionary function exemption. The only claim that survived the discretionary function defense was based on an alleged duty to notify the informant of her legal remedies regarding protection from the defendant (*e.g.*, apply for a restraining order). On appeal after remand, the Eleventh Circuit subsequently dismissed that claim on jurisdictional grounds as well, holding there was no special relationship between the prosecutor and the informant that required the prosecutor to protect her. 273 F.3d 1315, 1317-18 (11th Cir. 2001).

---

[4] As to application in the discretionary function exemption, *Fair* is called into question by *United States v. Gaubert*, 499 U.S. 315 (1991), to the extent that *Fair* denied application based on decisions made at the operational level. In *Gaubert*, the Supreme Court held that there is no bright line test that excludes operational decisions from the policy making arena. 499 U.S. at 325. The pertinent question is whether a particular decision is grounded in policy. *Id.*

[5] The distinguishing factors between the case at bar here and *Mulloy v. United States*, 884 F. Supp. 622 (D. Mass. 1995), are discussed in Federal Defendants' Motion To Dismiss at 8-9 and are not repeated here.

7

Next, we consider the cases pertaining to the alleged relationship between the FBI and Sampson. None are analogous. Sampson had not been in federal custody just prior to his murder of Philip McCloskey, nor was he serving as an informant, or being supervised in any way by the FBI. *Marin* is thus distinguishable on its facts. Similarly, *Williams v. United States*, 450 F. Supp. 1040 (D.S.D. 1978), involved claims of negligence by hospital personnel after the hospital released a patient known to have history of violent, hostile and psychotic behavior. *Sheridan v. United States*, 487 U.S. 392 (1988), concerned the application of the intentional tort exception to FTCA. There, the Court recognized a separate negligence claim based on a theory that federal employees failed to prevent another government employee who was known to be intoxicated and brandishing a weapon to leave naval hospital grounds in violation of specific regulations. 487 U.S. at 401. In addition, the Court found that the Government assumed responsibility to perform a "good Samaritan" task of caring for a person who was visibly drunk and armed. *Id.* Such facts are simply not present here.

This case is also distinguishable from a recent decision by this Court in *Estate of Davis v. United States*, No. CIV A 02-11911-RCL, 2004 WL 2345555 (D. Mass. Oct. 15, 2004) (Lindsay, J.). In *Davis*, this Court denied the United States' motion to dismiss and in so doing rejected the Government's argument that the plaintiffs failed to show that a duty of care existed under Massachusetts law. Finding that the FBI had a "special relationship" with informants, the Court held that such relationship created "a duty owed to the general public to control them." 2004 WL 2345555 at *9. The Court also found that FBI agents had a duty of care based on their lengthy history of allowing their informants to commit crimes, thus "substantially assisting" in a murder. *Id.* While the United States does not necessarily agree with the analysis in *Davis*, it is clear that

8

these theories for establishing a duty of care are not viable here. Sampson was not an informant and had not developed a long-established relationship with FBI agents.

Because the McCloskeys cannot show that a duty of care existed, they fail to carry their burden in establishing jurisdiction and a necessary element of their negligence claims.

### B. Theories of proximate cause based upon speculation should be rejected.

Most of the cases cited in Plaintiffs' Opposition on the issue of foreseeability are "special relationship" cases pertaining to social host liability involving service of alcoholic beverages, premises liability, or common carrier liability based on a failure to provide reasonably needed security. *See* Pl. Opp. at 19 (citing cases). These cases are simply not applicable in the law enforcement arena where a victim of a superseding criminal act seeks to impose liability on a federal law enforcement agency based on a disconnected phone call from an individual who never made known his intent to murder unknown victims.

The few cases on foreseeability that involve law enforcement situations are hardly analogous to the facts here. They involve either a special relationship or knowledge by law enforcement of prior violent crimes against persons. *See, e.g., Coughlin v. Department of Correction*, 43 Mass. App. Ct. 809 (Mass. App. Ct. 1997); *Brown v. Washington County*, 163 Or. App. 362, 987 P.2d 1254 (Or. Ct. App. 1999); *Torres v. New Mexico*, 119 N.M. 609, 894 P.2d 386 (N.M. 1995); *Benway v. City of Watertown*, 1 A.D.2d 465, 467, 151 N.Y.S.2d 485 (N.Y. App. Div. 1956). And *Laurence v. City of Cambridge*, 422 Mass. 406 (Mass. 1996), involved a promise by law enforcement to protect the victim. No such facts are present here.

More importantly, the McCloskeys fail to cite any controlling or persuasive caselaw to show that their argument on proximate cause is nothing more than conjecture. They simply argue that because Sampson allegedly waited for "several hours" in a particular location, it is not speculative to suggest he would have been apprehended shortly after his phone call to the FBI. Pl. Opp. at 23. This argument, however, is built on a house of cards. First, it assumes that FBI would have immediately made the task of confirming Sampson was a fugitive a priority and upon such confirmation, would have immediately taken steps to arrest him. Second, it assumes that if such decisions were made, FBI would have notified local law enforcement to request that they make the arrest. Third, it assumes that local law enforcement would have made the task of apprehending Sampson an immediate priority. Finally, it assumes that all of this would have occurred within the "several hours" that Sampson allegedly waited, and that Sampson would have been located and apprehended during that time.

Caselaw simply doesn't support the notion that layer upon layer of speculation such as we find here satisfies a plaintiff's burden to establish a *prima facie* case of proximate cause sufficient to withstand a motion to dismiss. The McCloskeys' "chain of causation is too long and contains too many speculative links," *Brum v. Town of Dartmouth*, 428 Mass. 684, 689 (Mass. 1999), to connect Anderson's conduct with the harm that the befell Philip McCloskey. Although typically issues of proximate cause are left to the factfinder, in a case with rampant speculation such as this, as a matter of law the harm suffered is "sufficiently remote in everyday life as not to require special precautions for the protection of patrons." *Westerback v. Harold F. LeClair Co., Inc.*, 50 Mass. App. Ct. 144, 146 (Mass. App. Ct. 2000) (court can decide question of proximate cause as a matter of law).

## CONCLUSION

For the above reasons, and those set forth in the Federal Defendants' Motion To Dismiss, the Federal Defendants respectfully request that this Court grant their Motion to Dismiss.

Dated at Burlington, in the District of Vermont, this 22nd day of November, 2004.

Respectfully submitted,

DAVID V. KIRBY
Acting United States Attorney

By: /Carol L. Shea
CAROL L. SHEA
Special Attorney
Chief, Civil Division
U.S. Attorney's Office
P.O. Box 570
Burlington VT 05402-0570
(802) 951-6725

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the *pro se* parties and the attorney of record for Plaintiffs by regular mail on November 22, 2004.

/Carol L. Shea, Special Attorney