UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

|  |  |  |
|---|---|---|
| THOMAS S. MCCLOSKEY and | ) | |
| KEVIN P. MCCLOSKEY, | ) | Civil Action No. 04-CV-11015 |
|       Plaintiffs | ) | |
| | ) | |
|   v. | ) | |
| | ) | |
| ROBERT S. MUELLER, III, Director of the | ) | |
| Federal Bureau of Investigation; THE FEDERAL | ) | |
| BUREAU OF INVESTIGATION; | ) | |
| WILLIAM H. ANDERSON, Individually and as an | ) | |
| employee of the Federal Bureau of Investigation; | ) | |
| THE UNITED STATES OF AMERICA; and | ) | |
| GARY LEE SAMPSON, | ) | |
|       Defendants | ) | |

---

MEMORANDUM AND ORDER ON
THE FEDERAL DEFENDANTS' MOTION TO DISMISS AND
ON SAMPSON'S MOTION TO DISMISS AND TO APPOINT COUNSEL

LINDSAY, District Judge.

     Before me is a motion of Robert S. Mueller, III ("Mueller"), in his capacity as Director of

the Federal Bureau of Investigation (the "FBI"); the FBI; William H. Anderson ("Anderson"), in

his capacity as an employee of the FBI; and the United States of America (collectively the

"Federal Defendants")[1] to dismiss the complaint filed against them by Thomas S. McCloskey and

Kevin P. McCloskey (collectively "the Plaintiffs").  The defendant, Gary Lee Sampson

("Sampson") has filed a separate motion to dismiss all claims against him and for the appointment

of counsel to represent him in this matter.

---

    [1] Earlier in this proceeding, I granted the parties' joint motion to dismiss the claims
against Anderson in his individual capacity.

I.      Background

      A.      <u>Factual Background</u>

The complaint, as amended, makes the following allegations.

On July 23, 2001, Anderson, who worked as a personnel security specialist at the Boston office of the FBI, covered the switchboard of the Boston office during lunch.  Anderson took a call from Sampson, who identified himself and told Anderson that he "was a fugitive, wanted for several bank robberies and that he was in the town of Abington [ Massachusetts] and wanted the [FBI] to come and take him into custody."  (Am. Compl. ¶ 15).  Anderson disconnected the call; Sampson did not call back.  (Am. Compl. ¶¶ 16, 24).  Anderson neither reported the call to an agent or a supervisor, nor took steps to trace or track the call.  (Am. Compl. ¶¶ 25, 26).  Either the equipment Anderson was using did not permit him to track and trace the call, or Anderson was not properly trained in the use of the equipment.  The FBI did not supervise Anderson or regularly monitor or scrutinize records.  (Am. Compl. ¶ 26).

On July 24, 2001, Sampson car-jacked Philip McCloskey ("McCloskey") and murdered him.  Before being apprehended on July 31, 2001, in Vermont, Sampson also murdered two other persons.  (Am. Compl. ¶ 13).  After he was arrested, Sampson reported that he called the FBI's Boston office on July 23, 2001, seeking to surrender himself to the FBI.  (Am. Compl. ¶ 14).  Sampson, who was tried and received the death penalty for the murder of McCloskey, is currently an inmate in the care, custody, and control of the Federal Bureau of Prisons.  (Am. Comp. ¶8)

B.     Procedural Background

The Plaintiffs, who are the executors of the estate of McCloskey, have sued Sampson and the Federal Defendants. They seek compensatory and punitive damages, together with costs and expenses. The ten-count complaint contains six counts against the Federal Defendants and four counts against Sampson. Counts I and II assert a negligence claim under the Federal Tort Claims Act, 28 U.S.C. §§ 2671-80 (the "FTCA"), and a civil rights claim under 42 U.S.C. § 1983 ("Section 1983"), respectively. Both claims are based on Anderson's conduct in disconnecting Sampson's call and failing subsequently to trace, track, or report the call to his supervisors to ensure Sampson's capture. (Am. Compl. ¶¶ 29-37). Count III alleges that the Federal Defendants violated McCloskey's civil rights under Section 1983 by their "clear indifference and pattern of deliberate indifference coupled with inadequate training, supervision and use of inadequate technology." (Am. Compl. ¶¶ 38-40). Counts IV and V set forth state law negligence claims and seek compensatory damages and damages against the Federal Defendants for McCloskey's conscious pain and suffering. (Am. Compl. ¶¶ 41-51). Count VI asserts a state law claim for punitive damages against the Federal Defendants. (Am. Compl. ¶¶ 52-56). Counts VII, VIII, IX, and X assert Massachusetts state law claims against Sampson for McCloskey's wrongful death and conscious pain and suffering and for punitive damages.

II.     Discussion

For the purposes of a Rule 12 (b)(6) motion to dismiss, the court must "accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor and determine whether the complaint, so read, sets forth facts sufficient to justify

recovery on any cognizable theory." *Giuliano v. Fulton,* 399 F. 3d 381, 386 (1st Cir. 2005)

(quoting *Martin v. Applied Cellular Tech.,* 284 F.3d 1, 6 (1st Cir. 2002)).

A.     <u>The tort claims against the Federal Defendants (counts I, IV, V, and VI)</u>

Citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985), the Federal Defendants explain

that the Plaintiffs' claims against federal agencies or federal employees, acting in their official

capacities, are in reality claims against the United States.  This assertion of the Federal Defendants

is not entirely correct, as applied to the amended complaint in this case.  The *Graham* case stands

for the proposition that official-capacity suits must be treated as suits against the federal entity.

473 U.S. 159.  Therefore, a suit against Mueller and Anderson in their respective official

capacities is to be treated as a suit against the FBI, but the suit against the FBI itself will not be

treated as a suit against the United States.  *Id.*

Citing *Bennett v. Federal Bureau of Investigation*, 278 F. Supp. 2d 104, 121 (D. Mass.

2003), the Federal Defendants point out that the FTCA expressly prohibits lawsuits against

individual federal agencies like the FBI.  Citing 28 U.S.C. § 2679(d) and 28 C.F.R. § 15.3, they

further explain that where, as here, the Attorney General has certified that individual federal

employees (Mueller and Anderson), sued in their official capacity, acted within the scope of their

employment at all relevant times, the United States must be substituted as the party defendant in

their stead.[2]  The Federal Defendants point out that, because the United States is already a named

---

[2]  The Attorney General's certifications are attached to the Federal Defendants' memorandum in support of their motion to dismiss.  *See Coyne v. United States*, 233 F. Supp. 2d 135, 140 (D. Mass. 2002) (explaining that, under 28 U.S.C. § 2679(d)(1), "when the U.S. Attorney certifies that a defendant government employee was acting within the scope of her employment during the incident out of which a negligence claim arises, 'any civil action or proceeding commenced upon such claim . . . shall be deemed an action against the United States . . . and the United States shall be substituted as the party defendant'").

4

defendant in this case, no substitution is required, and that the court should dismiss all counts directed against Mueller, Anderson, and the FBI.

> a.    Claims against Mueller and Anderson

I dismiss counts I, IV, V, and VI, to the extent that they set forth claims against Mueller and Anderson. The FTCA, 28 U.S.C. § 2679(b)(1) provides that "[t]he remedy against the United States provided by [28 U.S.C. §§ 1346(b) and 2672] for . . . personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment is *exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee* whose act or omission gave rise to the claim or against the estate of such employee" (emphasis added). Section 2679(b)(1) further provides that "[a]ny other civil action or proceeding for money damages arising out of or relating to the same subject matter against the employee . . . is precluded without regard to when the act or omission occurred." *Bennett*, 278 F. Supp. 2d at 121 (explaining that the FTCA provides jurisdiction for claims brought "against the United States"). Accordingly, the Plaintiffs' claims against Anderson and Mueller set forth in counts I, IV, V, and VI, are dismissed.

> b.    Claims against the FBI

I also dismiss counts I, IV, V, and VI, to the extent that they set forth claims against the FBI.[3] The FTCA makes it clear that individual agencies of the United States may not be sued in tort for personal injuries or death caused by "the negligent or wrongful act or omission" of any

---

[3] Counts I, IV, V, and VI of the complaint textually do not set forth claims against the FBI. These counts assert claims against the United States, and Anderson and Mueller in their official capacities. The Federal Defendants' memorandum, however, is written as though each of these counts is directed against the FBI as well.

federal employee acting within the scope of his or her employment.  28 U.S.C. § 1346(b); *see*

*Allen v. Veterans Admin*, 749 F. 2d 1386, 1388 (9th Cir. 1984) (citing *Evans v. United States*

*Veterans Admin. Hospital*, 391 F.2d 261, 262 (2d Cir. 1968) (per curiam), *cert. denied*, 393 U.S.

1040 (1969)); *see also Bennett*, 278 F. Supp. 2d at 121 (explaining that the FTCA  "does not

permit tort actions to be brought against federal agencies"; concluding that "no claim cognizable

under [28 U.S.C. § 1346(b)] may be brought against the relevant federal agency in its own

name").  As in *Bennet*, the Plaintiffs' action is cognizable under the FTCA because the complaint

in this case "asserts all the required elements – the claim is one for wrongful death under

Massachusetts state law, arising from actions taken by an FBI employee within the scope of his

employment and seeking money damages against the United States."  278 F. Supp. 2d at 121.

Consequently, the FTCA "remedy [against the United States] is the exclusive remedy, and the FBI

is not a proper defendant" on counts I, IV, V, and VI.  *Id.* (dismissing the FTCA claims against

the FBI for lack of subject matter jurisdiction).

        c.    <u>Claims against the United States – the discretionary function</u>
<u>exception</u>

       The United States may be sued only if it has consented to be sued.  *Lehman v. Nakshian*,

453 U.S. 156, 160 (1981) (explaining that "the United States, as sovereign, 'is immune from suit

save as it consents to be sued . . . and the terms of its consent to be sued in any court define that

court's jurisdiction to entertain the suit'" [citation omitted]); *see United States v. Testan*, 424

U.S. 392, 399 (1976); *United States v. Sherwood*, 312 U.S. 584, 586 (1941); *see also United*

*States v. Mitchell*, 445 U.S. 535, 538 (1980) (emphasizing that the waiver of sovereign immunity

must be "unequivocally expressed"); *Soriano v. United States*, 352 U.S. 270, 276 (1957) (noting

that the Supreme Court "has long decided that limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied"). The Federal Defendants agree that the FTCA is a limited consent to suit.

The Federal Defendants argue that this court does not have subject matter jurisdiction of the Plaintiffs' claims against the United States because: (1) the challenged actions fall within the discretionary function exception to the FTCA; and/or (2) a private person would not be liable in like circumstances under Massachusetts law.

Citing *Horta v. Sullivan*, 4 F.3d 2, 21 (1st Cir. 1993), and *Kelly v. United States*, 924 F.2d 355, 362 (1st Cir. 1991), the Federal Defendants argue that investigative functions and decisions, including whether, when and how to investigate or apprehend fugitives, are subject to the discretionary function exception. They contend that the United States has not waived its sovereign immunity for claims based on the FBI's exercise of its discretion to determine whether, when, and how to investigate or apprehend individuals like Sampson. *See* 28 U.S.C. § 2680(a). They add that the Plaintiffs' negligence claim, arising out of the FBI's failure to use specific technology to reconnect or trace calls, is also subject to the discretionary function exception, because it implicates budgetary and policy-making decisions. The Federal Defendants rely on *Limar Shipping Ltd. v. United States*, 324 F.3d 1, 10 (1st Cir. 2003) (citing *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 820 (1984)), in support of this contention.

The Federal Defendants further argue that the United States is liable neither for Anderson's alleged negligence in disconnecting Sampson's call, nor for the FBI's alleged negligence in training or supervising Anderson because, under Massachusetts law, a private

7

person would not be liable in like circumstances.  Alternatively, the Federal Defendants argue that

the complaint does not establish that the United States owed McCloskey a duty of care.  They cite

*Leidy v. Borough of Glenolden*, 277 F. Supp. 2d 547, 569-70 (E.D. Pa. 2003), in support of the

proposition that there is no general duty to protect victims of crimes.

      For their part, the Plaintiffs assert that, in the context of a motion to dismiss, it is not

proper for this court to determine whether a purely "discretionary act" is involved here.  They

assert that further discovery is needed to determine whether, in disconnecting Sampson's call and

failing to inform his supervisors of the call, Anderson violated any applicable policy, rule, or

regulation.

      Relying on *Sheridan v. United States*, 487 U.S. 392 (1988); *Mulloy v. United States*, 884

F. Supp. 622, 631-32 (D. Mass. 1995); and *Williams v. United States*, 450 F. Supp. 1040 (D.

S.D. 1978), the Plaintiffs also argue that the United States owed McCloskey a duty of care.  They

contend that the FBI had a "special relationship" with Sampson because the agency knew that he

was a violent fugitive from justice, and that the "special relationship" between the FBI and

Sampson became "even more crystallized" when Sampson contacted the FBI and told Anderson

that he wanted to be taken into custody.

      The "discretionary function exception" to the FTCA**,** set forth in 28 U.S.C. § 2680(a),

protects the government from lawsuits "based upon the exercise or performance or the failure to

exercise or perform a discretionary function or duty on the part of a federal agency or an

employee of the Government, whether or not the discretion involved be abused."  *See Coyne v.*

*United States*, 233 F. Supp. 2d 135, 144-45 (D. Mass. 2002).  The exception is intended to

prevent the courts from second-guessing "legislative and administrative decisions grounded in

social, economic and political policy through the medium of an action in tort." *Id.* at 145 (quoting *Campbell v. United States*, 167 F. Supp. 2d 440, 447-48 (D. Mass. 2001)).  The Supreme Court has described a discretionary function as one "in which there exists an 'element of judgment or choice,'" *Coyne*, 233 F. Supp. 2d at 145 (quoting *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)), and the court must dismiss any claim "covered by the discretionary function exception . . . for lack of subject matter jurisdiction," *Kelly*, 924 F.2d at 360.  *See* 28 U.S.C. § 1346(b); *see also Muniz-Rivera v. United States*, 326 F.3d 8, 17 (1st Cir. 2003); *Irving v. United States*, 909 F.2d 598, 600 (1st Cir. 1990).

There is a two-prong test to determine whether particular conduct falls within the discretionary function exception:  (1) "whether the challenged action was a matter of choice for the acting official"; and (2) "whether the official's discretion was based on considerations of public policy."  *Coyne*, 233 F. Supp. 2d at 145 (citing *United States v. Gaubert*, 499 U.S. 315, 322-23 (1991)); *see Kelly*, 924 F.2d at 360.  With regard to the first prong, the court must focus on "the nature of the conduct, rather than the status of the actor," *Kelly*, 924 F.2d at 360 (quoting *Varig Airlines*, 467 U.S. at 813), and determine "whether the action is a matter of choice for the acting employee," *Kelly*, 924 F.2d at 360 (quoting *Berkovitz*, 486 U.S. at 536).  An action is outside the scope of the discretionary function exception "if a federal statute, regulation or policy specifically prescribes a course of action for [an official] to follow, because [the official] has no rightful option but to adhere to the directive."  *Coyne*, 233 F. Supp. 2d at 145 (quoting *Magee v. United States*, 121 F.3d 1, 4 (1st Cir. 1997)); *see Limar Shipping Ltd.*, 324  F.3d at 7 (explaining that the exception does not apply "when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow" (quoting *Berkovitz*, 486 U.S. at 536)).

9

With regard to the second prong, the inquiry must center "not on the agent's subjective intent in exercising the discretion . . . , but on the nature of the actions taken and on whether they are susceptible to policy analysis." *Gaubert*, 499 U.S. at 325.  There exists a presumption that if "there is an exercise of discretion, that exercise is based on considerations of public policy." *Coyne,* 233 F. Supp. 2d at 145 (citing *Shansky v. United States*, 164 F.3d 688, 692 (1st Cir. 1999)); *see also Muniz-Rivera,* 326 F.3d at 17.  The plaintiff bears the burden of showing that the challenged decision "does not lend itself to a policy analysis." *Coyne*, 233 F. Supp. 2d at 145.  If an action "meets both prongs of this test . . . and is thus within the discretionary function exception, even an abuse or negligent exercise of discretion is not actionable." *Id*.

I hold that under the principles set forth above, Anderson's actions in dealing with Sampson's call fall within the discretionary function exception.  The FBI's broad discretion to decide whether to investigate and/or apprehend a particular individual, encompasses the discretion of an individual officer like Anderson to report or not report a particular call.  *Coyne*, 233 F. Supp. 2d at 145 (concluding that the plaintiff's FTCA claim, arising, in pertinent part, out of the government's alleged failure to place the plaintiff's decedent in the witness protection program, fell within the discretionary function exception; noting that the officers dealing with informants "us[e] their discretion[ to] determine which cases to bring to the attention of the Attorney General so that the Attorney General can act accordingly by either placing an individual in the [witness protection program] or not").  Therefore, the first prong of the discretionary function  test is met.

The second prong of the test is also met here, because, in deciding which cases to bring to his supervisors' attention, an officer like Anderson  "necessarily weighs the benefit to society" in preventing future crime against the limited nature of law enforcement resources. *Berkovitz*, 486

U.S. at 537 (explaining that, in *Varig Airlines*, the decision of the Federal Aviation Administration to "spot-check" airplanes for compliance with safety standards was within the discretionary function exception to the FTCA because "it represented a policy determination as to how best to 'accommodat[e] the goal of air transportation safety and the reality of finite agency resources'"); *Kelly*, 924 F.2d at 362 (clarifying that "decisions to investigate" or not investigate a particular individual "are at the core of law enforcement activity" that the discretionary function exception "was designed to safeguard"); *Coyne*, 233 F. Supp. 2d at 146 (concluding that the second prong of the test was satisfied because, "in making the determination as to which cases to bring [to the supervisor's attention, the federal] officer of necessity weighs the benefits to society of protecting an individual and receiving the information he has against the cost of placing the individual in the WPP").

       To the extent that the Plaintiffs' claim is based on the assumption that, if notified of Sampson's call, the FBI would have immediately arrested Sampson, thereby preventing McCloskey's death, their claim also falls within the discretionary function exception to the FTCA. *Horta*, 4 F.3d at 21 (explaining that, while "law enforcement agents have a mandatory duty to enforce the law, decisions as to how best to fulfill this duty are protected by the discretionary function exception to the FTCA"); *see Atallah v. United States*, 955 F.2d 776, 782-84 (1st Cir. 1992) (concluding that customs agents have discretion, protected by 28 U.S.C. § 2680(a), to search or not search a particular passenger "without fearing legal repercussions"); *Littell v. United States*, 191 F. Supp. 2d 1338, 1345 (M.D. Fla. 2002) (emphasizing that "[t]he overwhelming consensus of federal case law establishes that criminal law enforcement decisions . . . are discretionary in nature and, therefore, by Congressional mandate, immune from judicial

review"). *Compare Estate of Davis v. United States,* 340 F. Supp. 2d 79, 93 (D. Mass. 2004) (concluding that, in light of the circumstances of that case, the conduct of the FBI agents in failing to warn the plaintiff's decedent of impending danger was not protected by the discretionary function exception because "a federal official cannot have discretion to behave unconstitutionally or outside the scope of his delegated authority"). Furthermore, to the extent that the Plaintiffs' FTCA claim against the United States is based on the FBI's failure to use particular technology, that claim also falls within the discretionary function exception and must, therefore, be dismissed for lack of subject matter jurisdiction. *See Limar Shipping Ltd.*, 324 F.3d at 10 (explaining that "[a]llocation of resources and budget management involve prioritizing and are quintessentially policy-based choices").[4]

Even if the conduct at issue were not protected by the discretionary function exception, this court still would not have subject matter jurisdiction of the Plaintiffs' FTCA claim against the United States. Under the FTCA, district courts have jurisdiction to hear claims against the United States for money damages arising out of "personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, *under the circumstances where the United States, if a private person,*

---

[4] *Ochran v. United States*, 117 F.3d 495 (11th Cir. 1997), cited by the Plaintiffs, actually helps the Federal Defendants. In *Ochran*, a federal prosecutor refused to protect an informant after learning that a criminal defendant had threatened the informant. 117 F.3d at 498-99. The court concluded that the prosecutor's decision fell within the "discretionary function" exception to the FTCA and dismissed all but one claim. *Id*. at 501-02. The only surviving claim was based on the prosecutor's alleged duty to notify the informant of her legal remedies regarding protection from the defendant. *Id*. at 504. On a second appeal after remand, the court dismissed that claim, concluding that the prosecutor did not owe the informant a duty of care because there was no special relationship between the prosecutor and the informant. *Ochran v. United States*, 273 F.3d 1315, 1317-18 (11th Cir. 2001).

*would be liable to the claimant in accordance with the law of the place where the act or omission occurred* (emphasis added)."  28 U.S.C. § 1346(b)(1).  Thus, to hold the United States liable for Anderson's conduct in disconnecting Sampson's telephone call and for the FBI's alleged negligent supervision and training of Anderson,[5] the Plaintiffs must show that, under Massachusetts law, a private person in similar circumstances would be liable.  *Rakes v. United States,* 352 F. Supp. 2d 47, 57 (D. Mass. 2005) (noting that the FTCA liability arises only in circumstances where a private person would be liable to the plaintiff under the law of the state where the act or omission took place); *see Sea Air Shuttle Corp. v. United States*, 112 F.3d 532, 56 (1st Cir. 1997) (explaining that "violation of a federal statute by governmental actors does not create liability unless state law would impose liability on a 'private individual under like circumstances,' 28 U.S.C. § 2674").

To prevail on a negligence claim under Massachusetts law, the plaintiff must establish that (1) the defendant owed the plaintiff a legal duty, (2) the defendant breached that duty, (3) proximately or legally causing (4) the plaintiff's actual injury or damages.  *Fithian v. Reed*, 204 F.3d 306, 308-09 (1st Cir. 2000) (explaining that, while "such matters most often comprise grist for the jury's mill, they may be resolved on summary judgment when the facts lead ineluctably to a particular outcome"); *see Primus v. Galgano*, 329 F.3d 236,  (1st Cir. 2003); *Magarian v. Hawkins*, 321 F.3d 235, 238 (1st Cir. 2003); *Jorgensen v. Massachusetts Port Auth.*, 905 F.2d 515, 522 (1st Cir. 1990).  In the context of an FTCA claim, a legal duty of care exists where there is "some relationship between the governmental employee[s] and the plaintiff to which state law

---

[5]  These claims are set forth in counts I, IV, and V.  Even though counts IV and V do not reference the FTCA, under 28 U.S.C. § 2679(b)(1), the FTCA is the exclusive remedy against the United States for McCloskey's wrongful death.

would attach a duty of care in purely private circumstances." *Sea Air Shuttle Corp.*, 112 F.3d at 537 (quoting *Myers v. United States*, 17 F.3d 890, 899 (6th Cir. 1994)).

In defining the duty of care in tort actions, Massachusetts follows the RESTATEMENT (SECOND) OF TORTS § 315 (1965) ("Section 315"). *Mosko v. Raytheon Co.*, 416 Mass. 395, 400 n.7 (1993); *Jean v. Commonwealth*, 414 Mass. 496, 513 (1993); *see Rakes*, 352 F. Supp. 2d at 59 (discussing Section 315 and citing *Jean*). Section 315 "recognizes two types of special relationships that may form the basis of an exception to the general principle that a person has no duty to control the conduct of a third person." *Jean*, 414 Mass. at 513.

The first arises where "a special relation exists between the actor [i.e., the person whose duty is at issue] and the third person which imposes a duty upon the actor to control the third person's conduct." RESTATEMENT (SECOND) OF TORTS § 315; *see Jean*, 414 Mass. at 514 (concluding that, under RESTATEMENT (SECOND) OF TORTS § 320 (1965), the defendants "may have been in a special relationship with [the third person] because of their custody of and control over him"); *see also Mosko*, 416 Mass. at 400 n.7 (noting that "a person may have a duty to control the actions of another so as to prevent harm to third parties if a 'special relation' exists between the person and the other who should be controlled"). Such relationships include parent – child, master – servant, possessor of land or chattels – licensee. RESTATEMENT (SECOND) OF TORTS §§ 316-18 (1965). In addition, if one "takes charge" of a person having dangerous propensities, he is under a duty to control that person's conduct if he knows or should know of the person's dangerous propensities. *See,* RESTATEMENT (SECOND) OF TORTS § 319 (1965); *see also Estate of Davis,* 340 F. Supp. 2d at 91. Finally, under certain circumstances, one who "is required by law to take or who voluntarily takes the custody of another" in such a way as

to deprive the other of his normal ability to defend himself, is under a duty to exercise reasonable care to control the conduct of third persons so as to prevent those persons from harming the person in custody.  RESTATEMENT (SECOND) OF TORTS § 320 (1965).

The second exception arises where "a special relation exists between the actor and the other [i.e., the potential plaintiff] which gives to the other a right to protection."  RESTATEMENT (SECOND) OF TORTS § 315.  This second kind of a special relation exists between (1) a common carrier and its passengers, (2) an innkeeper and his guests, (3) a possessor of land who holds the land open to the public and members of the public who enter the land in response to his invitation, and (4) one who "is required by law to take or who voluntarily takes the custody of another" in a way that deprives that person "of his normal opportunities for protection" and the other person. RESTATEMENT (SECOND) OF TORTS § 314A (1965).

If neither of the two special relationships described above exists, "the actor is not subject to liability if he fails, either intentionally or through inadvertence, to exercise his ability so to control the actions of third persons as to protect another from even the most serious harm." RESTATEMENT (SECOND) OF TORTS § 315 cmt. b (emphasizing that the actor is not liable even if he "realizes that he has the ability to control the conduct of a third person, and could do so with only the most trivial of efforts and without any inconvenience to himself"); *see Rakes*, 352 F. Supp. 2d at 59 (quoting *Carrier v, Riddell, Inc.*, 721 F.2d 867, 868-69 (1st Cir. 1983), where the court explained that, if the defendant's alleged negligence consists of "an *omission* – a *failure to act* – a defendant's duty not to act negligently is more limited[; i]t extends . . . to those whom [the] defendant[] ha[s] helped to place in a position where they are likely to depend upon his avoiding negligent omissions" [emphases in original]).

15

The cases cited by the Plaintiffs are inapposite. In *Mulloy*, the administrator of an estate of an officer's wife, who was raped and murdered by an enlistee while she (the officer's wife) was living on a military base, sued the United States under the FTCA, alleging that the Army was negligent in failing to discover the enlistee's extensive criminal history. If discovered, the plaintiff claimed, the enlistee's criminal history would have disqualified him from serving in the United States Army. 884 F. Supp. at 624. The *Mulloy* court explained that, under Illinois law, the United States would be liable because (1) by enlisting the person who ultimately raped and murdered the plaintiff's decedent, the United States "affirmatively created the conditions under which he was able to perpetrate his crimes against [the decedent]; (2) "the [United States] Army, through its enlistment and screening process, voluntarily assumed a duty to exclude from the military community those persons, such as [the enlistee], whose criminal history made them unfit to serve"; and (3) the plaintiff's decedent "was in a special relationship to the United States Army that is analogous to the relationships which create a duty to protect against foreseeable third-party crimes under Illinois law" (i.e., she was an invitee and a tenant of the United States Army on one of its military bases). 884 F. Supp. at 632. None of these three factors is present here.

In *Sheridan v. United States*, 487 U.S. 392 (1988), the plaintiffs, injured by an intoxicated off-duty Navy serviceman who worked at a naval hospital, filed an FTCA claim against the United States, alleging that their injuries were caused by the United States' negligence in allowing the serviceman to leave the hospital with a loaded rifle. 487 U.S. at 392. Before the incident, naval corpsmen found the serviceman "in drunken stupor" in the hospital building and saw the rifle, but did not take any further action to subdue the serviceman or notify their superiors. *Id*. The Court explained that 28 U.S.C. § 2680(h) (barring "[a]ny claim [against the United States] arising out of

16

assault, battery" or other specified intentional torts of the government employees), did not

preclude an action against the United States for negligently allowing the assault to occur. *Id*. at

398. The Court reasoned that, "by adopting regulations that prohibit the possession of firearms

on the naval base and that require all personnel to report the presence of any such firearm, and by

further voluntarily undertaking to provide care to a person who was visibly drunk and visibly

armed, the government assumed responsibility to perform [its] Good Samaritan task in a careful

manner [internal citation and quotation marks omitted]." *Id*. at 401. No such facts are present

here.

In *Williams*, 450 F. Supp. at 1040-41, the plaintiff sued the United States under the FTCA

to recover for the wrongful death of the plaintiff's decedent who was killed one day following his

assailant's release from a Veteran's Administration hospital. The *Williams* court concluded that

the hospital had a duty to notify county authorities (as it had agreed to do) of the discharge and

release of the assailant who had a known propensity for violence. 450 F. Supp. at 1044-45.

Because here the FBI never had custody of Sampson, and, thus, could not have promised to

notify McCloskey (or any other person or entity) of his release, *Williams* also is inapposite.

In addition, the present case is distinguishable from *Fair v. United States*, 234 F.2d 288

(5th Cir. 1956), because here, the FBI never promised to protect McCloskey or notify

McCloskey's of Sampson's presence in the area.[6]

_____

[6] In *Fair*, the plaintiff brought an FTCA action against the United States to recover for
the deaths of three persons shot by an air force officer after he had been released from the air
force hospital. 234 F.2d 288, 289-90 (5th Cir. 1956). The complaint alleged, in relevant part,
that (1) the air force officer had previously threatened the life of one of the plaintiff's decedents;
(2) the other two decedents had been hired to protect her; and (3) air force physicians and a
provost marshal knew of the officer's threats on the decedents' lives and promised to provide
notification before the officer was released, but gave no such notification. *Id*.

This case is also distinguishable from *Marin v. United States*, 814 F. Supp. 1468, 1483, 1485-86 (E.D. Wash. 1992) (concluding that the government had a duty "to warn a known potential victim of a known danger"), because the FBI did not know that McCloskey was a clear target of Sampson's and that he was in danger.

Finally, I agree with the Federal Defendants that this case is distinguishable from *Estate of Davis v. United States,* 340 F. Supp. 2d 79 (D. Mass. 2004). In that case, the plaintiff brought an FTCA action against the United States, alleging that the FBI wrongfully permitted two of its informants to commit criminal actions that resulted in her decedent's murder. *Id.* at 81. I concluded that, under Massachusetts law, the United States had a "special relationship" with its informants, "creating a duty owed to [members of] the general public to control [the informants]." *Id.* at 93. I also explained that, "[i]n allegedly permitting [the informants] to commit crimes with impunity and not warning the foreseeable victims of those crimes, the government gave [the informants] 'substantial assistance' in murdering [the plaintiff's decedent]." *Id.* at 91, 93 (remarking that "[a]nother theory of liability recognized in Massachusetts law and applicable to the plaintiff's claims against the government here is that of joint liability or liability arising from

---

The *Fair* court reasoned that, under the FTCA, the government's conduct had to be "measured by the same rules as the local law applie[d] to a private employer under like circumstances." *Id.* at 295, 296 (emphasizing that, under the FTCA, the government's liability was to be "modeled upon the like liability of an employer for the acts of its agents in their dealings with third persons"). The court further remarked that there was no "determinant precedent in Texas law," and noted that the trial court would have to "look to general law fixing liability of private institutions for injuries to those towards whom they have a responsibility." *Fair*, 234 F.2d at 295. The court concluded that, in light of the "fluid and relatively uncertain state of the law," it was not proper for it to dispose of the plaintiff's case on a motion to dismiss. *Id.* at 296 (stating that the plaintiff was entitled to a trial on the merits).

the aiding and abetting of another in a wrongful act").  Neither of these two bases for imposing

liability is present here.

In sum, nothing in this case suggests that a special relationship existed between the

Federal Defendants and Sampson that would obligate the Federal Defendants to control

Sampson's conduct.  Sampson had not been in federal custody before he murdered McCloskey,

he had not been an FBI informant, *compare Davis*, 340 F. Supp. 2d 79, and he had not been

supervised by the FBI in any way.  Furthermore, under the RESTATEMENT (SECOND) OF TORTS §

314A, no special relationship existed between the Federal Defendants and McCloskey, obligating

the Federal Defendants to protect McCloskey from foreseeable harm.  Because, under

Massachusetts law, a private person would not be liable to the Plaintiffs under like circumstances,

no claim lies against the United States.

B.    Section 1983 claims (counts II and III)

The Federal Defendants point out that counts II and III of the complaint do not set forth a

deprivation "under color of any state law" of any right, privilege, or immunity guaranteed by the

United States Constitution, but concern, instead, the acts or omissions of federal officials

employed by the FBI.  They explain that, on its face, Section 1983 does not apply to the acts of

federal officers or agents.  Therefore, according to the Federal Defendants, the court should

dismiss the Plaintiffs' Section 1983 claims.

The Federal Defendants further suggest that counts II and III of the complaint could be

construed as asserting a claim under *Bivens v.  Six Unknown Named Agents of Federal Bureau of

Narcotics*, 403 U.S. 388 (1971).  The Federal Defendants insist, however, that while *Bivens*

allows suits against individual federal actors, it does not permit claims against federal agencies or

19

federal employees sued in their official capacities, and does not establish an exception to the federal government's sovereign immunity. Relying on *Kentucky v. Graham*, 473 U.S. 159, 165 (1985), the Federal Defendants reiterate that, for the purposes of sovereign immunity, suits against federal agencies and against federal employees, acting in their official capacities, are deemed to be suits against the United States.

The Plaintiffs acknowledge that, by its terms, Section 1983 claims concern the actions of state agencies or employees and do not apply to the United States or its agencies and employees. The Plaintiffs concede that their complaint does not allege any action under color of state law by the Federal Defendants, but speculate that discovery may provide a basis for a Section 1983 claim by revealing the nature of Anderson's FBI employment or "the potential involvement or application of any [s]tate law or regulation" to the facts of this case. They cite *Tritsis v. Backer*, 355 F. Supp. 225 (N.D. Ill. 1973), *aff'd*, 501 F.2d 1021 (7th Cir. 1974), and *Peck v. United States*, 470 F. Supp. 1003 (S.D.N.Y. 1979), in support of this position. The Plaintiffs argue that, in the interests of justice, I should defer ruling on their Section 1983 claims until discovery is completed. They say that, because the same discovery is involved in all the claims asserted, the defendants will not be prejudiced if I were temporarily to retain jurisdiction over the Section 1983 claims. The Plaintiffs also state that they may be prepared voluntarily to dismiss their Section 1983 claims if discovery confirms that the facts of this case do not implicate or involve any state law or regulation, and that the matter is limited to issues of federal law.

In their reply memorandum, the Federal Defendants argue that postponing the dismissal of the Plaintiffs' Section 1983 claims pending further discovery would enable the Plaintiffs to go on a "purely dilatory and needless" fishing expedition. They point out that the Attorney General has

20

certified that Mueller and Anderson acted within the scope of their employment at all relevant

times, and note that the Plaintiffs have not challenged this certification.

I conclude that counts II and III of the complaint must be dismissed, because none of the

Federal Defendants can be said to have acted under "color of state law."  Section 1983 is based

on the Fourteenth Amendment and is, therefore, limited in scope.  *District of Columbia v. Carter*,

409 U.S. 418, 423-24 (1973) (explaining that the legislative history and purpose of Section 1983

was to enforce the Fourteenth Amendment).  It "deals only with those deprivations of rights that

are accomplished under the color of the law of 'any state or Territory.'"  *Carter*, 409 U.S. at 424.

To state a claim under Section 1983, the plaintiff must allege (1) "the violation of a right

secured by the Constitution and laws of the United States" (2) committed by "a person acting

under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).  As in *West*, the adequacy and

the sufficiency of the Plaintiffs' showing on the first element are not contested; the only issue

before the court is whether the Plaintiffs have established "the second essential element – that [the

Federal Defendants] acted under color of state law."  487 U.S. at 48-49.

It is well-established that a Section 1983 action cannot lie against federal officers acting

under color of federal law.  *Carter*, 409 U.S. at 424 (explaining that the actions "of the Federal

Government and its officers are at least facially exempt from [the] proscriptions" of Section

1983); *Behre v. Thomas*, 665 F. Supp. 89, 92 (D. N.H. 1987); *see Wheeldin v. Wheeler*, 373 U.S.

647, 650 n.2 (1963) (concluding that an investigator of the United States House of

Representatives Un-American Activities Committee was not acting "under color" of state law for

purposes of Section 1983); *Bivens v. Six Unknown Named Agents of Federal Bureau of

Narcotics*, 456 F.2d 1339, 1346 (2d Cir. 1972) (on remand) (noting that the Civil Rights Act does

not apply to federal officers).  However, one may bring a Section 1983 action against federal employees who conspire or act in concert with state officials to deprive a person of his civil rights under color of state law.  *See Tower v. Glover*, 467 U.S. 914, 920 (1984) (explaining that "an otherwise private person acts 'under color of' state law when engaged in a conspiracy with state officials"); *Krohn v. United States*, 578 F. Supp. 1441, 1447-48 (D. Mass. 1983) (noting that, to make federal officers liable under Section 1983 for actions done under color of state law, the plaintiff must show either that "the deprivation of his rights was directly occasioned by acts of federal officials," or that "federal officials participated in a conspiracy to deprive him of a constitutional right"; emphasizing that, "in either case . . . the plaintiff must show that the federal officials acted or conspired to act *under color of state law*; it is not enough that they simply acted in concert with state officials to deprive plaintiff of a constitutional right" [emphasis in original]), *rev'd in part on other grounds*, 742 F.2d 24 (1st Cir. 1984).

In this case, counts II and III are devoid of any allegations that the Federal Defendants acted under color of any state law.  The Federal Defendants "are never asserted to be other than employees and agents of the United States."  *See Behre*, 665 F. Supp. at 93.  Moreover, there is no allegation that the Federal Defendants conspired with state officials to deprive McCloskey of his constitutional rights.  Accordingly, counts II and III of the complaint "fall[] far short of alleging the type of activity which would permit maintenance of a [S]ection 1983 action" against the Federal Defendants.  *Behre*, 665 F. Supp. at 93.[7]

---

[7] Even converting the claims set forth in counts II and III into *Bivens* claims (which I am not required to do) would not help the Plaintiffs.  In *Bivens*, the plaintiff sued six individual agents of the Federal Bureau of Narcotics, alleging that the agents entered his apartment without a warrant, searched the apartment, and arrested the plaintiff "unlawfully" and "unreasonably" (i.e., without probable cause).  403 U.S. at 389.  The Court concluded that a Fourth Amendment

C.     Claim for punitive damages (count VI)

Count VI purports to state a claim for punitive damages against the Federal Defendants. The FTCA provides that the United States "shall not be liable . . . for punitive damages." 28 U.S.C. § 2674. Because the FTCA is the only basis for this court's jurisdiction of the Plaintiffs' claims against the United States, I dismiss count VI to the extent that it asserts a claim for punitive damages against the United States. I also dismiss count VI to the extent that it seeks punitive damages against Anderson and Mueller, because, as noted earlier, Section 2679(b)(1) of the FTCA precludes "[a]ny other civil action or proceeding for money damages arising out of or relating to the same subject matter against the employee[s]" of the United States, whose act or omission gave rise to the FTCA claim.

2.     Sampson's motion to dismiss all claims against him (counts VII-X) and to appoint counsel

Because I am granting the Federal Defendants' motion to dismiss, I will decline to exercise jurisdiction of the Plaintiff's claims against Sampson, all of which arise under Massachusetts law. *See* 28 U.S.C. § 1367(c)(3) (explaining that the district court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if [it] has dismissed all claims

---

violation "by a federal agent acting under color of his authority gives rise to a cause of action for damages consequent upon his unconstitutional conduct." *Bivens*, 403 U.S. at 389, 397. While *Bivens* allowed private suits against individual federal agents, nothing in *Bivens* suggests that the Court intended to allow such suits against federal agencies or federal agents sued in their official capacities. *See id.* at 397 (remarking that there exists "no explicit congressional declaration that persons injured by a federal officer's violation of the Fourth Amendment may not recover money damages from the agents"). The Plaintiffs have not brought this action against Mueller individually, and have not served Mueller with the complaint. *Compare Bivens*, 403 U.S. at 390 n.2 (explaining that the plaintiff's complaint was served on five agents). In addition, the Plaintiffs have agreed voluntarily to dismiss any claims against Anderson individually. For these reasons, converting the Plaintiffs' claims into *Bivens* claims would not have saved them from dismissal.

23

over which it has original jurisdiction.")  Sampson's motion for appointment of counsel is

therefore moot.

      III.    Conclusion

      For the foregoing reasons, I GRANT the Federal Defendants' motion to dismiss and

decline to exercise jurisdiction over the Plaintiffs' claims against Sampson.  In light of these

rulings, Sampson's motion for appointment of counsel is moot.

      SO ORDERED


DATED:      September 2, 2005        /s/ REGINALD C. LINDSAY
                                     United States District Judge